**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**
**AT KANSAS CITY, KANSAS**

| | | |
|---|---|---|
| ANDRE D. CANNON, | ) ) ) | Case No.: |
| *Plaintiff,* | ) ) | |
| v. | ) ) | |
| AMARR COMPANY d/b/a AMARR GARAGE DOORS, | ) ) ) | |
| *Please Serve registered agent:* The Corporate Company, Inc. 112 SW 7th Street Suite 3C Topeka, KS 66603 | ) ) ) ) ) ) | |
| *Defendant.* | ) ) | |

## COMPLAINT

Andre Cannon, by and through his counsel of record, for his Complaint against Amarr Company d/b/a Amarr Garage Doors, ("Amarr") alleges the following:

### Parties

1.      Andre Cannon ("Cannon") is a citizen of the United States and a resident of Douglas County, Kansas.

2.      Defendant Amarr is a foreign corporation licensed to do business in the state of Kansas and that maintains a place of business within this District, and Defendant may be served with process via its Kansas resident agent, The Corporation Company, 112 SW 7th Street Suite 3C, Topeka, Kansas 66603.

**Nature of Action**

3.      This action seeks redress for race discrimination, for hostile work environment, and retaliation under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e, *et seq* ("Title VII"), 42 U.S.C. §1981 ("§1981"), disability discrimination and retaliation in violation of the Americans with Disabilities Act, 42 U.S.C. Ch. 126 §12101, *et seq*. ("ADA") and age discrimination in violation of the Age Discrimination in Employment act of 1967, 29 U.S.C. §621, *et seq*., ("ADEA").

**Jurisdictional Basis**

4.      This Court has primary jurisdiction over the Title VII, §1981, ADA claims and ADEA claims pursuant to 28 U.S.C. §1331.

5.      Defendant Amarr is located within this district. Accordingly, as the acts complained of herein took place within this District, the venue is proper in this district under 28 U.S.C. §1391.

**Administrative remedies have been exhausted**

6.      Cannon incorporates by reference all previous and subsequent paragraphs as though set forth separately herein.

7.      Cannon filed a Charge of Discrimination (No. 28D-2019-00763) with the U.S. Equal Employment Opportunity Commission (EEOC), for age discrimination, disability discrimination and retaliation on or about June 10, 2019.  He amended this Charge to add race discrimination, retaliation and hostile working environment on September 26, 2019.  Cannon was issued a notice of right to sue on December 17, 2019.  This complaint has been filed within 90 days of receipt of each.  *See*, documents attached hereto.

8.     Accordingly, Cannon has met all administrative prerequisites prior to filing this action.

## Facts Common to All Counts

9.     Cannon is an African-American Male over 40 years of age.

10.     Cannon began his employment with Amarr in 2014 as a fabricator.

11.     In 2016, Cannon was promoted to production coordinator and had good reviews through 2018.

12.     In 2017, while Cannon was assigned to supervise an employee on his line that he was supervising as a production coordinator, and her name was Brandy, a Caucasian female employee.

13.     While under Cannon, Brandy's work performance on the line was deficient, and was slowing down the manufacturing line, specifically as it pertained to having to rerun the run sheets.

14.     As a result, Cannon wrote up Brandy and contacted his supervisor to let him know of the writeup.

15.     Upon learning of the writeup, Brandy filed a sexual harassment complaint against Cannon with Human Resources ("HR") and they investigated the complaint which was subsequently unfounded.  However, due to the allegations, Cannon was subjected to a hostile work environment due to Brandy's unfounded allegations.  Brandy suffered no consequences as a result of her false allegations.

16.     In the beginning of 2018, Brandy was taken off the line for insubordination, and as a result, was required to read and sign a copy of her job description per company policy.

17.     Shortly thereafter, Brandy files another complaint against Cannon with HR.

18.     The 2nd complaint was also unfounded by HR.

19.     Following the second complaint being unfounded, Cannon reported to HR that he believed the two investigations he was subjected to were because of his race and racially motivated.  He also questioned why HR would gladly investigate any complaint brought by Brandy, but would not investigate his claims as to the racial motivation of the investigations into him.

20.     Upon information and belief, Cannon had been subjected to racially motivated complaints and investigations based upon him being an African American.

21.     In addition, the people in HR began looking at Cannon differently and treated him differently than other employees.  Cannon was being subjected to a hostile-work environment that was motivated by these racially motivated complaints by Brandy.

22.     Following the second complaint by Brandy, she was transferred to another department within the company where she worked for a Caucasian male supervisor who shortly thereafter terminated her for the same deficient conduct as experienced under Cannon.

23.     The white supervisor was not subsequently investigated for any type of sexual harassment complaint by HR, and Cannon believed that the investigations into him were racially motivated.

24.     Cannon sustained a lumbar injury for which he sought treatment throughout the fall of 2017 through 2018, and he was given light duty restrictions for work.

25.     Defendant allowed Cannon to continue his job even though he was placed on light duty by his doctor and he continued to aptly perform his job throughout the first half of 2018, and actually continued to perform his job until September 2018.

26.     In June 2018, with continued pain in his back, Cannon's doctor prescribed lumbar surgery for Cannon, which was originally scheduled to take place on July 24, 2018.

27.     Unfortunately for Cannon, Defendant's health insurer postponed the first surgery date and rescheduled it for September 2018.

28.     Even though in a lot of pain, Cannon continued to work throughout the summer and into the early fall of 2018.

29.     On September 9, 2018, Mr. Cannon's supervisor noticed Cannon was experiencing significant pain in his lower back and sent him home from work.

30.     As a result of the continued pain, Cannon applied for the short-term disability and starting receiving FMLA in September 2018.

31.     Shortly thereafter, Defendant's health insurer against postponed Cannon's surgery and rescheduled it for November 1, 2018.

32.     Cannon's position as a production coordinator did not require him to perform his duties with no medical restrictions.

33.     Upon information and belief, there were other employees with similar or worse injuries, who were allowed to be placed on light duty while recovering from their injuries, one of which was a Caucasian female.

34.     Cannon finally underwent his surgery on November 1, 2018.

35.     In December 2018, Cannon began receiving long term disability benefits from the Defendant's long-term disability insurance carrier.

36.     In January 2019, Cannon's doctor released him to return to work with restrictions.

37.     Defendant refused to allow Cannon to return to work in January 2019 when he attempted to do so, and advised him that he could not return to work unless he received a release to work without any restrictions.

38.     Although Cannon had previously performed his job duties with light-duty work restrictions, Defendant refused to allow him to return to work in January 2019 unless it was without any restrictions.

39.     Other employees who had previously had surgery(s) for more serious injuries were permitted to return to work with light-duty restrictions when their medical provider would initially only release them back to work on light duty.

40.     February 6, 2019, Defendant advised Cannon that it would be terminating his employment if he did not return to work by March 10, 2019 even though it would not allow him to return to work unless his doctor released him without any restrictions.

41.     Defendant refused to allow Cannon to return to work with light duty restrictions even though white Caucasian workers were permitted to return to work with light duty restriction.

42.     Defendant discriminated against and ultimately fired Cannon for exercising his disability rights, and taking short and long-term disability through the Defendant's disability benefits program.

43.     Accordingly, it is reasonable to infer that Amarr discriminated against Cannon because of his race, age, disability, perceived disability or a record of disability, subjected him to a hostile work environment, and/or retaliated against him for his engagement in this protected activity.

### COUNT I
### Violation of the Americans with Disabilities Act, 42 U.S.C. Ch. 126 §12101, *et seq*.
### Disability Discrimination

44.     Cannon realleges and incorporates all preceding paragraphs.

45.     Amarr was an employer for purposes of the ADA.

46.     Cannon was an employee of Amarr for the purposes of the ADA.

47.     Cannon was disabled for purposes of the ADA.

48.     Cannon had a record of being disabled for purposes of the ADA.

49.     Amarr regarded Cannon as being disabled for purposes of the ADA.

50.     Amarr terminated Cannon because he was disabled, had a record of being disabled or because it regarded him as disabled.

51.     The adverse employment actions alleged above directly and proximately caused Cannon to suffer damages, including lost wages, lost benefits, garden variety emotional distress, loss of enjoyment of life, humiliation, pain and suffering, personal indignity, embarrassment, fear, anxiety, and/or anguish.

52.     The persons who terminated Cannon were agents of Amarr who were acting in the court and scope of their agency with Amarr or acted with express authority from Amarr.

53.     Amarr, through its agents or employees, acted outrageously by engaging in discriminatory practices with malice or reckless indifference to Cannon's federally protected rights. Amarr is therefore liable for punitive damages in an amount sufficient to punish Amarr and to deter it and other employers from engaging in similar conduct.

WHEREFORE, Cannon prays for judgment against Amarr on Count I of his Complaint, for a finding that he was been subjected to unlawful discrimination in violation of 42 U.S.C. §12101, *et seq.*; for compensatory and punitive damages; equitable relief; costs expended; reasonable attorneys' fees provided by 42 U.S.C §2000e-5(k); and for such other and further relief the Court deems just and proper.

## COUNT II
### Violation of the Americans with Disabilities Act, 42 U.S.C. Ch. 126 §12101, *et seq*. Retaliation

54.    Cannon realleges and incorporates all preceding paragraphs.

55.    Cannon engaged in protected activity by seeking workplace accommodations to accommodate his disability.

56.    Amarr retaliated against Cannon by terminating his employment.

57.    That materially adverse acts alleged above directly and proximately caused Cannon to suffer damages, including lost wages, lost benefits, garden variety emotional distress, loss of enjoyment of life, humiliation, pain and suffering, personal indignity, embarrassment, fear, anxiety, and/or anguish.

58.    Amarr's retaliation against Cannon was done with malice and reckless indifference to Cannon's federal protected rights.  Amarr is therefore liable for punitive damages in an amount sufficient to punish Amarr and to deter it and other employers from engaging in similar conduct.

WHEREFORE, Cannon prays for judgment against Amarr on Count II of his Complaint, for a finding that he was been subjected to unlawful discrimination in violation of 42 U.S.C. §12101, *et seq*.; for compensatory and punitive damages; equitable relief; costs expended; reasonable attorneys' fees provided by 42 U.S.C §2000e-5(k); and for such other and further relief the Court deems just and proper.

<u>**COUNT III**</u>
**Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et seq*.**
**Racial Discrimination and Racial Harassment**

59.    Cannon realleges and incorporates all preceding paragraphs.

60.    During the course of Cannon's employment, Amarr's representative, acting within the scope and course of employment, engaged in a pattern and practice of intentional discrimination and racial harassment against Cannon.

61.    Amarr's harassment had the purpose and effect of unreasonably interfering with Cannon's work performance thereby creating an intimidating, hostile and offensive working environment.

62.    The conduct as described herein would have offended a reasonable person of the same race in Cannon's position.

63.    Management level employees knew, or should have known, of the racial harassment and discrimination described herein, but failed to take appropriate remedial action.

64.    By failing to conduct a prompt, thorough and  honest investigation of Cannon's allegations and of other witnesses, Amarr exacerbated the racially hostile environment and discrimination in Cannon's work place.

65.    Because of its actions, Amarr deliberately rendered Cannon's working conditions intolerable.

66.    Amarr has discriminated against Cannon by treating him differently from and less preferable than similarly situated non-African American employees.

67.    The adverse employment actions alleged above directly and proximately caused Cannon to suffer damages, including lost wages, lost benefits, garden variety emotional distress,

loss of enjoyment of life, humiliation, pain and suffering, personal indignity, embarrassment, fear, anxiety, and/or anguish.

68.     Amarr's conduct against Cannon was done with malice and reckless indifference to Cannon's federal protected rights.  Amarr is therefore liable for punitive damages in an amount sufficient to punish Amarr and to deter it and other employers from engaging in similar conduct.

WHEREFORE, Cannon prays for judgment against Amarr on Count III of his Complaint, for a finding that she was been subjected to unlawful discrimination in violation of Title VII; for compensatory and punitive damages; equitable relief; costs expended; reasonable attorneys' fees provided by 42 U.S.C §2000e-5(k); and for such other and further relief the Court deems just and proper.

## COUNT IV
### Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et seq*.
### Retaliation

69.     Cannon realleges and incorporates all preceding paragraphs.

70.     Cannon engaged in protected activity by complaining about race discrimination to people in management positions.

71.     Amarr engaged in adverse employment actions against Cannon for engaging in protected activities.  Such adverse employment actions have been in the form of subjecting him to unfavorable terms and conditions of employment.  The adverse employment actions have materially and adversely affected Cannon's overall terms and conditions of employment.

72.     A reasonable employee would find Amarr's retaliatory acts materially adverse and such acts would dissuade a reasonable person from making or supporting a charge of discrimination.

73.     Amarr's retaliatory acts against Cannon were a direct and proximate result of his protected activities.

74.     The adverse employment actions alleged above directly and proximately caused Cannon to suffer damages, including lost wages, lost benefits, garden variety emotional distress, loss of enjoyment of life, humiliation, pain and suffering, personal indignity, embarrassment, fear, anxiety, and/or anguish.

75.     Amarr's retaliation against Cannon was done with malice and reckless indifference to Cannon's federal protected rights.  Amarr is therefore liable for punitive damages in an amount sufficient to punish Amarr and to deter it and other employers from engaging in similar conduct.

WHEREFORE, Cannon prays for judgment against Amarr on Count IV of his Complaint, for a finding that he was been subjected to unlawful discrimination in violation of Title VII; for compensatory and punitive damages; equitable relief; costs expended; reasonable attorneys' fees provided by 42 U.S.C §2000e-5(k); and for such other and further relief the Court deems just and proper.

## COUNT V
### Violation 42 U.S.C §1981
### ("§1981")

76.     Cannon realleges and incorporates all preceding paragraphs.

77.     During the course of Cannon's employment, Amarr's representatives, acting within the scope and course of employment, engaged in a pattern and practice of intentional discrimination against him.

78.     Amarr's harassment had the purpose and effect of unreasonably interfering with Cannon's work performance thereby creating an intimidating, hostile and offensive working environment.

79.     The conduct as described herein would have offended a reasonable person of the same race in Cannon's position.

80.     Management level employees knew, or should have known, of the racial harassment and racial discrimination described herein, but failed to take appropriate remedial action.

81.     By failing to conduct a prompt, thorough and honest investigation of Cannon's allegations and of other witnesses, Amarr exacerbated the racially hostile environment and racial discrimination in Cannon's work place.

82.     Because of its actions, Amarr deliberately rendered Cannon's working conditions intolerable and later terminated his employment.

83.     Amarr, through its agents and employees, engaged in these discriminatory practices with malice or reckless indifference to Cannon's federally protected rights.

84.     As a direct and proximate cause of the actions and conduct set forth herein, Cannon suffers and will continue to suffer damages, including, emotional distress, and inconvenience.

WHEREFORE, Cannon prays for judgment against Amarr for a finding that he has been subjected to unlawful discrimination; for an award of compensatory and punitive damages; for his costs expended; for his reasonable attorneys' and expert's fees; and for such other and further relief the Court deems just and proper.

## COUNT VI
**Violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. §621, *et seq*.
("ADEA")
Age Discrimination**

85.     Cannon realleges and incorporates all preceding paragraphs.

86.     Cannon was 44 years old when he learned of his termination.

87.     Cannon is within the class of persons protected by 29 U.S.C. 621, *et seq*.

88.     At all times material, Cannon is entitled to the rights and protections provided under the ADEA.

89.     Amarr discriminated against Cannon on the basis of his age in violation of the ADEA.

90.     Amarr, by and through its officers, employees and agents, engaged in a continuing pattern and practice of discrimination against or disparate treatment of plaintiff based upon Cannon's age, ultimately terminating Cannon.

91.     The materially adverse acts alleged above directly and proximately caused Cannon to suffer damages, including lost wages, lost benefits, garden variety emotional distress, humiliation, intimidation embarrassment and frustration.

92.     Amarr's treatment of Cannon was done with malice and reckless indifference to his federal protected rights.  Merck is therefore liable for punitive damages in an amount sufficient to punish Merck and to deter it and other employers from engaging in similar conduct.

WHEREFORE, Cannon prays for judgment against Merck on Count VI of his Complaint, for a finding that he was been subjected to unlawful discrimination in violation of the ADEA; for compensatory and punitive damages; equitable relief; costs expended; reasonable attorneys' fees

provided by 29 U.S.C §§262(b) and 216(b); and for such other and further relief the Court deems just and proper.

## Jury Demand and Place of Trial

Cannon respectfully requests a trial by jury on all issues so triable in Kansas City, Kansas.

## Designation of Place of Trial

Cannon respectfully requests that trial in this matter be held at the Robert J. Dole Courthouse, 500 State Avenue, Kansas City, Kansas 66101.

HKM EMPLOYMENT ATTORNEYS LLP

*/s/ John J. Ziegelmeyer III*
John J. Ziegelmeyer III     KS No. 23003
1501 Westport Road
Kansas City, Missouri 64111
Tel: 816.875.3332
jziegelmeyer@hkm.com
www.hkm.com

*/s/ Christopher J. Lawler*
THE LAWLER FIRM, LLC
Christopher J. Lawler, KS 21095
4510 Belleview Ave., Suite 202
Kansas City, MO 64111
P: (816) 912-4700, F: (866) 567-9151
Email: chris@lawlerfirmllc.com
www.lawlerfirmllc.com
**ATTORNEYS FOR PLAINTIFF**